IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ELAINE L. CHAO,                        )
          Plaintiff,                   )
                                       )
     v.                                )   Civil Action No. 04-1002
                                       )
MARILYN CONSTABLE, et al.              )
          Defendants.                  )

MEMORANDUM and ORDER

Gary L. Lancaster,
District Judge.                              December 16th, 2006

          This  is  an  action  in  breach  of  fiduciary  duty.
Plaintiff, Elaine L. Chao, the Secretary of Labor of the United
States Department of Labor, alleges that defendants, primarily
employees or trustees of the ABC Local No. 12 Employer and
Employee Life Benefit Fund (the "Fund"), breached their fiduciary
duties to administer the Fund for the benefit of the members of
the Bakery, Confectionery, Tobacco Workers and Grain Millers
Union in violation of sections 404 and 406 of the Employee
Retirement Income Security Act of 1974, or ERISA.  29 U.S.C. §§
1104(a)(1), 1106(a)(1)(D), and 1106(b)(1).   Plaintiff seeks
injunctive relief, as well as monetary restitution.

          Pending are the parties' motions for summary judgement, as
well as related motions [doc. nos. 130, 137, 205, 225, 229, 250,
279, and 284].  For the reasons set forth below, we will resolve
most of this case on summary judgment. However, the  case must
proceed to determine the final amount of restitution and

prejudgment interest, and injunctive relief.   The liability of

Robert Tomasic also cannot be determined on summary judgment.


I.    BACKGROUND

Unless otherwise indicated, the following facts are not in

dispute.  Other facts may be discussed in context throughout this

memorandum.

Plaintiff accuses several parties of breaching their

fiduciary duties under ERISA.    First, plaintiff claims that

Marilyn   Constable,   the   Fund's   administrative   employee,

misappropriated Fund assets.   Second, plaintiff claims that Fund

trustees, Myron Rodzay, Agostino Corso, James Galicic, and Randy

Cellone failed to exercise proper supervision or control over Ms.

Constable and eventually abandoned the Fund, allowing Ms.

Constable's misdeeds to go unchecked for several years.   Third,

plaintiff claims that the Union, Local 19, Bakery, Confectionary

Tobacco Workers and Grain Millers Union, failed to exercise any

control or supervision over the Fund upon its merger with Local

12.

As a result of these breaches, plaintiff alleges that Ms.

Constable was able to spend nearly $60,000.00 of Fund assets on

personal, inappropriate, and/or undocumented expenses over a

period of approximately five years.    In addition, plaintiff

2

alleges that the Fund has been forced to pay nearly $60,000.00 to the Independent Fiduciary, who was appointed to administer the Fund while this action was pending. Finally, plaintiff alleges that it is entitled to an award of prejudgment interest of nearly $21,000.00.

The Fund was established pursuant to a written Trust Agreement. The Trust Agreement provided for administration of the Fund by a board of trustees, consisting of two employer trustees and two employee/union trustees. In the Trust Agreement, Randy Cellone and James Galicic were designated as the employer trustees. Donald DelDuca and Samuel Papa were designated as the employee/union trustees. Mr. Papa hired his daughter, Marilyn Constable, in 1986 to serve as the Fund's administrative assistant, to maintain the records and perform the day to day operations of the Fund. Until 1998, Ms. Constable performed her Fund-related job duties at the local Union offices.

In December of 1998, Ms. Constable took the Fund records, equipment, and checkbook out of the Union offices and moved them to an apartment. The trustees had not approved this move. In December of 1998 the trustees, through their attorneys, contacted Mr. Papa seeking return of the records and property. In January of 1999 the trustees, through their attorneys, wrote to Ms. Constable directly seeking return of the Fund property. Around

3

the same time, the trustees, through their attorneys, contacted the Department of Labor regarding their inability to regain control over Fund property. The trustees also sent instructions to National City Bank to close the Fund's checking account. The trustees' contact with Ms. Constable, the Department of Labor and National City Bank continued into February of 1999. However, the Fund property was never returned to the Union's offices, the Department of Labor never investigated the matter, and the Fund bank account was never closed.

During this same January-February 1999 time period several other actions were taken, or attempted, by the trustees, and former trustees. Mr. Rodzay, as Union president, wrote a letter removing Mr. Papa and Mr. DelDuca as the employee/union trustees and designating Mr. Rodzay and Mr. Corso as successor trustees. About six weeks later, Mr. Papa wrote a letter to Messrs. Cellone and Galicic stating that he was removing them as trustees because they had demanded that Ms. Constable return the Fund property and resume her duties out of the Union's offices without his permission.

Eventually all of the defendant trustees, under the purported belief that they had been removed, had quit, or had never properly taken office, ceased their involvement with the

4

Fund. Ms. Constable retained sole control over the Fund between February of 1999 and July of 2004, when this case was filed.

During a routine audit of the Union in October of 2003 the Department of Labor discovered that Ms. Constable was running the Fund out of her apartment, without supervision. After reviewing the Fund's financial records, the Department initiated a criminal investigation of Ms. Constable. She was indicted for theft or embezzlement from an employee benefit plan. In April of 2006 Ms. Constable signed a Pretrial Diversion Agreement with the Government in which she agreed to make an initial \$25,000 restitution payment directly to the Fund, followed by monthly payments to total \$38,800 in restitution. In July of 2004, the Department filed this civil suit.

## II.   STANDARD OF REVIEW

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather must go beyond the pleadings

and present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, i.e. the material facts, however, will preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. Id. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable fact finder could return a verdict for the non-moving party. Id. at 248-49.

Although inferences must be drawn in favor of the non-moving party, "an inference based upon speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990). Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d

Cir. 1989) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)); see also Lujan v. National Wildlife Fed., 497 U.S. 871, 888 (1990) ("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint ... with conclusory allegations of an affidavit").

Under these standards, the non-moving party must do more than show there is "some metaphysical doubt" as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (citations omitted).

In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a fact finder for resolution of that factual dispute or whether the evidence is so one-sided that the movant must prevail as a matter of law because no reasonable fact finder could return a verdict in her favor.

III. DISCUSSION

A. Statute of Limitations

The trustee defendants argue that plaintiff's claims against them are barred by ERISA's three-year statute of limitations. 29 U.S.C. §1113. Under that statute, a claim must be brought within three years of the earliest date on which the plaintiff had actual knowledge of the breach or violation. Id. To satisfy the "actual knowledge" requirement, a defendant must prove that plaintiff has actual knowledge of all material facts necessary to understand that some claim exists and that plaintiff has actual knowledge of all relevant facts at least sufficient to give her knowledge that a fiduciary duty has been breached. Gluck v. Unisys Corp., 960 F.2d 1168, 1177, 1178 (3d Cir. 1992); see also Richard B. Roush Profit Sharing Plan v. The New England Mutual Life Ins. Co., 311 F.3d 581, 586 (3d Cir. 2002). Because no trustee defendant can satisfy this actual knowledge requirement, we will enter summary judgment in plaintiff's favor on this issue.

According to the trustee defendants, plaintiff's three-year statute of limitations clock began to run in early 1999, when their attorneys contacted the Department of Labor seeking assistance in recovering the Fund property that Ms. Constable took from the local Union office. At that time, the trustees

8

told the Department that Ms. Constable had taken the property, had ignored their instructions to return it, and would not cooperate with them in the operation of the Fund. However, this knowledge could not have started the clock running on plaintiff's breach of fiduciary duty claims against the trustee defendants because it did not indicate that the trustees were abandoning the Fund to Ms. Constable. In fact, it indicated the opposite - that the trustees were being proactive and diligent, albeit unsuccessful, in their attempts to regain control of the Fund.

The undisputed evidence shows that in 1999 the Department's final action in relation to the matter was to advise the trustees to take all necessary steps to recover the Fund property. Although plaintiff knew at the time that Ms. Constable had been resisting the trustees' efforts, there is no evidence that plaintiff knew in 1999 that the trustees would ignore the Department's advice and stop trying to regain control of the Fund.

No reasonable fact finder could conclude that plaintiff gained knowledge of the trustee defendants' abandonment before 2003, when plaintiff investigated the matter during the Union's audit. Plaintiff filed her action against the trustee defendants in 2004, within the applicable statute of limitations. As such,

9

summary judgment will be entered in plaintiff's favor on this issue.

## B. Fiduciary Status

Under ERISA, a person is a fiduciary with respect to a plan to the extent he: (1) exercises any discretionary authority or discretionary control respecting management or disposition of its assets; (2) renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so; or (3) has any discretionary authority or discretionary responsibility in the administration of such plan. 29 U.S.C. § 1002(21)(A). Plaintiff contends that the defendants were fiduciaries during the relevant time period.

Because the issues related to each defendant are different, we will discuss each individually below.

### 1. Constable as Fiduciary

Plaintiff claims that Ms. Constable was a fiduciary. Ms. Constable has not responded to these allegations. We find that the facts are undisputed on this issue and that it is appropriate to enter summary judgment finding that Ms. Constable was a fiduciary.

10

Under ERISA, a person may become a fiduciary if she exercises "undirected authority and control" over plan assets. Srein v. Frankford Trust Co., 323 F.3d 214, 220-22 (3d Cir. 2003); Chao v. Day, 436 F.3d 234, 235-37 (D.C. Cir. 2006). It is undisputed that Ms. Constable assumed sole possession and control over the Fund's assets, both tangible and financial, starting in January of 1999. A person who appropriates and controls assets is a fiduciary under ERISA. Srein, 323 F.3d at 222-23.

There is no factual or legal dispute on this issue. We will enter summary judgment finding that Ms. Constable acted as a fiduciary from January 1999 through July of 2004.

### 2.   Union as Fiduciary

Plaintiff claims that Local 19 was a fiduciary of the Fund beginning in March of 2004, when it merged with Local 12. Because we find that the material facts are not in dispute and that the Union was a fiduciary as a matter of law, we will enter summary judgment finding that Local 19 was a fiduciary of the Fund.

According to plaintiff, because of the merger, Local 19 became a successor to Local 12, and thus, assumed Local 12's duty under the Trust Agreement to appoint the two employee/union

11

trustees. Trust Agreement, Sec. 10.02. Plaintiff contends that this power alone made the Union a fiduciary under ERISA. The Union contends that it cannot be deemed a fiduciary under ERISA because it exercised no discretionary powers over the Fund. It further claims that it cannot be responsible for any possible duty imposed on Local 12 under the Trust Agreement because it had no actual notice of the Trust Agreement, or the Fund, and because the Fund was defective under the Taft-Hartley Act.

We find that the Union's power to appoint two of the four trustees made it a fiduciary. Several courts considering this matter[1] have concluded that entities with the power to appoint, retain, and remove trustees have discretionary authority under ERISA. Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1465-66 (4th Cir. 1996) (citing cases); Leigh v. Engle, 727 F.2d 113, 134-35 (7th Cir. 1984). We find those cases to be instructive, and persuasive. Moreover, as plaintiff correctly notes, those cases cited by the Union in support of the contrary position actually discuss the fiduciary status of attorneys, accountants, or other third party professionals who perform services for a plan. They do not address whether a party given the power in a Trust

---

[1]     We have found no case from the Court of Appeals
        for the Third Circuit addressing this issue.

12

Agreement to appoint half the members of a board of trust can be deemed a fiduciary.

Therefore, we find as a matter of law that the power to appoint the two employee/union trustees makes the Union a fiduciary under ERISA, to the extent of that power. We further find that the Union's power to appoint carries with it the power to reasonably monitor the individuals who have been appointed. 29 C.F.R. § 2509.75-8 at FR-17; Ed Miniat, Inc. v. Globe Life Ins. Group, Inc., 805 F.2d 732, 736 (7th Cir. 1986); Selman, 98 F.3d at 1465.

We reject Local 19's argument that it cannot be a fiduciary because it had no notice of the Fund's existence at the time of the merger. The evidence is unclear as to exactly what Local 19 knew about the Fund in March of 2004, when it merged with Local 12. Although Local 19 claims that it knew nothing about the Fund's existence, we note that the merger occurred almost six months after the Department of Labor began its investigation of the Fund. However, we need not resolve this factual conflict in order to dispose of this argument on summary judgment.

We find that Local 19 had constructive notice of the Fund at the time of the merger. Local 19 acknowledges that several collective bargaining agreements referenced the Fund. There is no dispute that the written Trust Agreement still existed at the

time.   There is no dispute that the merger occurred while the
Department's investigation of the Fund, and Ms. Constable, was
ongoing.  Upon reasonable inquiry Local 19 would have discovered
its existence.   Although the Court of Appeals for the Third
Circuit has not addressed this issue, we find that under the
facts of this case, lack of actual notice, assuming that it, in
fact, exists, would not excuse Local 19 from its fiduciary duties
under ERISA.    See Atlantic Richfield Co. v. Blosenski, 847
F.Supp. 1261 (E.D. Pa. 1994) (allowing constructive notice to
satisfy notice requirement for imposing successor liability under
CERCLA); E.E.O.C. v. Local 638, 1988 WL 25151 (S.D.N.Y. March 9,
1988) (allowing constructive notice, or implied notice, to
satisfy notice requirement for imposing successor liability on
union for a Title VII claim).

     We similarly reject the Union's argument that it must be
relieved of its fiduciary status under ERISA because the Fund was
defective under the Taft-Hartly Act at the time of the merger.
Regardless of whether this is, in fact, true, the Union's
fiduciary duty was to appoint, monitor, and remove the two
employee/union trustees.  Even if the Fund was defective, to the
extent the current trustees were failing to fix it, the Union had
the duty to monitor and replace them, if necessary.

14

### 3.   Trustees as Fiduciaries

#### (A) Cellone and Galicic

There is no dispute that defendants Cellone and Galicic were designated as the two employer trustees in the Trust Agreement. However, these defendants contend that they were no longer trustees after February 28, 1999, when Mr. Papa sent them a letter stating that he was removing them from the board of trustees. According to these defendants, because Mr. Papa had appointed them, Mr. Papa had the power to remove them under the Trust Agreement. Trust Agreement, Sec. 10.04. However, no reasonable fact finder could conclude upon a review of the entire record that Mr. Papa appointed these two trustees.

At the time, Mr. Papa was the Union president. These defendants testified at their depositions that Mr. Papa designated them as the two employer trustees. However, both defendants acknowledge that the Trust Agreement itself states that "the Employers" had designated Messrs. Cellone and Galicic to be its trustees. Mr. Papa was not, and could not have been, an employer at the time the Trust Agreement was created.[2]  There

---

[2]    Defendants claim that Mr. Papa was an employer because the Union and the board of trustees, both of which he was the President, could become employers under the Trust Agreement. However, these two entities only achieved employer status "upon making" contributions to the Fund. As
(continued...)

15

is no reasonable basis for a finding that he appointed them to the board. The dispute over this fact is not genuine. While we would not doubt that Mr. Papa had a hand in deciding who the Employers would put on the board, and may have even recommended Messrs. Cellone and Galicic specifically, that does not make Mr. Papa the party who appointed them under the authority of the Trust Agreement. Rather, the party appointing them was "the Employers".

Because Mr. Papa did not appoint these two defendants to the board of trustees, it follows that he had no power to remove them. Because Mr. Papa had no power to remove them, and they never gave written notice to the board and the Employers of their resignation,[3] Messrs. Cellone and Galicic never resigned in accordance with the Trust Agreement. Trust Agreement, Sec. 10.05. Nor did they obtain the consent of the beneficiaries,

---

[2](...continued)
Cellone and Galicic were named employer trustees in the Trust Agreement itself no such contributions could have yet been made.

[3]    Although these defendants claim now that they gave the board such notice by accepting, or adopting, Mr. Papa's letter removing them, such an act would not comply with the terms of the Trust Agreement. Under the plain language of the Agreement, in order to resign the trustee was required to give written notice to the board and to the party appointing him (in this case, the Employers). There is no evidence that proper notification was provided.

or the court's permission to resign. <u>Glaziers and Glassworkers</u> <u>Union Local No. 252 Annuity Fund v. Newbridge Secs., Inc.</u>, 93 F.3d 1171, 1183-84 (3d Cir. 1996). As such, as a matter of law, they never resigned, and remained fiduciaries until July of 2004.

### (B) Rodzay

The facts regarding Mr. Rodzay's fiduciary status are not in dispute. Mr. Rodzay became a trustee on January 10, 1999, when the Union removed Mr. Papa and Mr. DelDuca. Rodzay sent a letter dated September 10, 1999 to Tom Christ, as secretary and treasurer of the Union, resigning his post, effective immediately. The letter was carbon copied to Messrs. Cellone and Galicic.[4] The letter was not sent to Mr. Corso.

According to the terms of the Trust Agreement, a trustee is permitted to resign "upon giving written notice to the Board and to the party appointing him." Trust Agreement, Sec. 10.05. The terms "'Trustees' or 'Board of Trustees'" are defined as "...the persons hereinbefore named and any successors thereto..." Trust Agreement, Sec. 2.07. Therefore, as of September 10, 1999, the board of trustees consisted of four people: Messrs. Cellone, Galicic, Rodzay, and Corso. The Union appointed Mr. Rodzay to

---

[4]     Notably, this occurred more than six months after Messrs. Cellone and Galicic now claim they were removed from the board of trustees by Mr. Papa.

the board.  Mr. Rodzay's letter was sent to a Union officer, Mr. Cellone, and Mr. Galicic.  Mr. Rodzay did not effectively resign in accordance with the Trust Agreement because he did not notify all members of the board of trustees.[5]  As such, as a matter of law, he never resigned, and remained a fiduciary until July of 2004.

### (C) Corso

Mr. Corso was named as a trustee in the January 10, 1999 letter from the Union replacing Mr. Papa and Mr. DelDuca.  Mr. Corso does not allege that he ever resigned his post.  However, he now claims that he never became a trustee because he did not sign a copy of the Trust Agreement.  Under the terms of the Trust Agreement trustees were required to sign the Agreement and Declaration of Trust, or an acceptance of office, to constitute an acceptance of office.  Trust Agreement, Sec. 10.03.

There is no dispute that Mr. Corso did not sign a copy of the Trust Agreement.  It is also undisputed that Mr. Corso signed documents as a trustee.  He also exercised discretionary authority and responsibility over the Fund by attending board

---

[5]     Although plaintiff, and Mr. Rodzay, contend that he did effectively resign, the clear language of the Trust Agreement and the undisputed facts do not support such a conclusion.

18

meetings, signing documents on behalf of the Fund, holding himself out as a trustee, and conducting the business of the Fund. 29 U.S.C. § 1002(21)(A). Therefore, we find, as a matter of law, that Mr. Corso was a fiduciary from January 10, 1999 until July of 2004.

## C. ERISA Violations

### 1. Constable Violates ERISA

There is no real dispute that Ms. Constable breached her fiduciary duties to the Fund. However, we cannot find, on summary judgment, that each expense or transaction that plaintiff claims was wrongful was a breach.

We will enter summary judgment finding that Ms. Constable breached her fiduciary duties to the Fund. We will also enter summary judgment finding that the following transactions resulted in a breach of her duties because the facts are complete and not in dispute, and no defendant has produced competent evidence to contradict plaintiff's claims:

- Excessive and unauthorized salary payments for the time period January 2001 to July 2004 in the amount of $5,687.00.

- $2,800.00 for unauthorized bonus payments.

19

- Claim for $12,842.00 in excessive office expense/utilities for the time period January 1999 to July 2004.

- Payment of Ms. Constable's monthly Union dues directly out of the Fund account in the amount of $992.00.

- Excessive payments into the B&C Pension Fund on Ms. Constable's behalf in the amount of $1,321.12.

- Payment for unnecessary Internet access in the amount of $708.00.

- Payment for unnecessary Cable television service in the amount of $3,954.45.

- Returned check and overdraft fees in the amount of $1,055.00.

- Payment of $600.00 directly to Ms. Constable for undocumented and unapproved travel expenses.

- Purchase of a sleeper sofa for use by Mr. Papa at the cost of $578.87.

- Purchase of kitchen appliances and supplies, and a television at the cost of $420.39.

- $6,791.48 in insurance premiums paid on ineligible employees.

- $14,601.00 in costs for unauthorized and excessive insurance.

- Unauthorized accidental death and dismemberment insurance in the amount of $633.15.

We will not enter summary judgment in plaintiff's favor for her full restitution demand, because there are insufficient, and conflicting, facts on which to make a determination of liability on the remaining transactions on summary judgment. Although all doubts regarding proof on damages will be resolved in plaintiff's favor, plaintiff's own evidence falls short on these items. Secretary of Labor v. Gilley, 290 F.3d 827, 830 (6th Cir. 2002) (citing cases):

- Claim for $1,600.00 in rental reimbursement. Plaintiff has not demonstrated what amount of the reimbursement was excessive.
- Claim for $175.00 for a safe deposit box. The evidence shows that this was used for Fund business.
- Claims for a $2,238.37 check written to Ms. Constable's daughter for the purchase of a computer, a $94.16 check written to Mr. Papa for supplies, and a $61.54 check written to Ms. Constable's daughter for computer software. Although these payments are suspect because they were made to Ms. Constable's family members, plaintiff has not produced any

21

evidence showing that the monies were not, in fact, used for Fund supplies and equipment.

- Claim for rental of laptop computers. Plaintiff has not identified the amounts for which it is seeking reimbursement.

## 2. Union Violates ERISA

The Union had a fiduciary duty under ERISA to appoint the two employee/union trustees, and to reasonably monitor them. The Union admits that it did not take any such actions. There is no dispute that the Union breached its fiduciary duty under ERISA beginning in March of 2004.

## 3. Trustees Violate ERISA

We have already determined that each of the trustee defendants, Messrs. Cellone, Galicic, Rodzay, and Corso, remained trustees of the Fund until July of 2004. It is undisputed that the trustee defendants took no action to supervise Ms. Constable or regain control of the Fund after their attempts in early 1999. Therefore, it is undisputed that the trustees breached their fiduciary duties under ERISA.

D.    Restitution

Breaching fiduciaries must restore the trust beneficiaries to the position that they would have held had it not been for the breach.  Donovan v. Bierwirth, 754 F.2d 1049, 1056 (2d Cir. 1985).  In other words, fiduciaries have a duty "to make good to such plan any losses to the plan resulting from each such breach."  29 U.S.C. § 1109(a).

Plaintiff claims that the direct losses to the Fund between January of 1999 and July of 2004 are $59,243.44.  As detailed above, plaintiff has proven on summary judgment that $52,984.46 of this amount is recoverable. Ms. Constable, Messrs. Cellone, Galicic, Rodzay, and Corso, and Union Local 19[6] are all jointly and severally liable for that amount.  Struble v. New Jersey Brewery Employees' Welfare Trust Fund, 732 F.2d 325, 332 (3d Cir. 1984), abrogated on other grounds, Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 109 (1989); 29 U.S.C. §§ 1104(a)(1); 1105(a)(2).  To the extent plaintiff is able to adequately prove the Fund's entitlement to the remaining amounts, the defendants will also be liable for that amount of restitution.    The

---

[6]    Plaintiff does not seek reimbursement from the Union for losses incurred prior to March of 2004. The Union's portion of the recovery will be pro-rated once a final judgment is entered.

23

$38,800.00 payable by Ms. Constable as restitution in her criminal case will be offset against this amount.

However, we find that no defendant is liable for the amounts expended for the cost of the Independent Fiduciary. Plaintiff recognized[7] that such costs would have been expended by another party had the Independent Fiduciary not been appointed. No one has demonstrated that the Independent Fiduciary's fees were unnecessary, or in excess of the reasonable cost to administer the Fund. Rather, they closely approximate the amounts expended by Ms. Constable to administer the Fund. Contrary to plaintiff's contention, the fact that Ms. Constable may have stopped making certain benefit payments on her own behalf in May of 2003[8] does not mean that the reasonable cost of Fund administration decreased. The Fund administrator, regardless of who that person was, was entitled to these amounts, which were reasonable and necessary to the administration of the Fund.

---

[7]    We need not decide whether plaintiff's interrogatory answer was an incontrovertible admission of this fact. It is certainly evidence in conformance with the court's independent determination on this issue. Regardless, plaintiff only claims that the answer was incorrect to the extent it failed to recognize that Ms. Constable had stopped making certain benefit payments on her own behalf in May of 2003. We dispose of that argument below.

[8]    We grant plaintiff's motion for leave to amend the declaration [doc. no. 279].

24

Most importantly, plaintiff has not provided any controlling authority for the proposition that the Fund would be able to recover such fees from breaching fiduciaries. We find that to do so would violate the "make whole" doctrine, and defy common sense, fairness, and logic. Even if the trustees had fulfilled their duties, and removed Ms. Constable, the reasonable costs of administering the Fund would have still been incurred. Plaintiff has not proven that any loss has been suffered by the Fund as a result of the Independent Fiduciary's costs. We will enter summary judgment disallowing the recovery of the Independent Fiduciary's fees from any defendant.

We will address the amount of prejudgment interest once a final restitution award is determined. However, we do find that prejudgment interest is appropriate in this case as a means of making the Fund whole for the violations that occurred.

E.    National City Bank

In their motions for summary judgment, trustee defendants Rodzay and Corso claim that to the extent they are liable for any losses to the Fund, National City Bank should be liable to them because it failed to close the Fund bank account when they instructed it to do so in February of 1999. National City has

25

filed a motion for summary judgment[9] claiming that the defendants' claims are barred by the statute of limitations. We will enter summary judgment in the bank's favor. These claims are barred by the applicable statute of limitations. 13 Pa. Con. Stat. Ann. § 4403(a) (three year statute of limitations expired in 2002; first filing in this case occurred in 2004).

     F.   Robert Tomasic

Defendants Cellone and Galicic were granted leave to add Robert Tomasic as an additional party. Mr. Tomasic was the Fund's accountant. No party presented any facts or argument regarding his liability in summary judgment briefing. Therefore, his liability, if any, cannot be determined at this time.

---

[9] Defendant Corso has filed a motion to quash National City's motion for summary judgment because it was filed out of time. [doc. no. 284]. While National City's motion was filed a month after the deadline for summary judgment motions, without leave of court, it could not have filed the motion within the deadline because it had no notice of defendants' intent to rely on 13 Pa. Con. Stat. Ann. § 4403(a). Under the circumstances, leave would have been granted.

## G.   Indemnification of Cellone and Galicic

Defendants Cellone and Galicic were granted leave to add the Fund as an additional party so that they could pursue indemnification from it.   However, we stayed that aspect of the case and informed the parties that we would rule on it after we determined whether these defendants had breached their fiduciary duties to the Fund. [doc. no. 110].  We have now found that these defendants breached their fiduciary duties.  Therefore, under the reasoning and authority discussed in that prior opinion, the indemnity provision in the Trust Agreement is void.   Trust Agreement, Sec. 13.06; 29 U.S.C. §1110(a); Delta Star, Inc. v. Patton, 76 F.Supp.2d 617, 640 (W.D. Pa. 1999); State Street Bank & Trust Co. v. Salovaara, 326 F.3d 130, 138 (2d Cir. 2003).  The court will lift the stay and enter an appropriate order to that effect.

## IV.   CONCLUSION

For the reasons set forth above, the majority of this case is ripe for resolution on summary judgment.  Questions regarding the final amount of restitution and interest, injunctive relief, and the liability of Mr. Tomasic remain unresolved.  The parties are directed to work toward resolving the limited open issues.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

```
ELAINE L. CHAO,                    )
         Plaintiff,                )
                                   )
    v.                             )    Civil Action No. 04-1002
                                   )
MARILYN CONSTABLE, et al.          )
         Defendants.               )
```

ORDER

Therefore, this 16th day of December, 2006, IT IS HEREBY ORDERED that:

Plaintiff's motion for summary judgment [doc no. 130] is GRANTED, in part, and DENIED, in part, in accordance with our Memorandum.

Defendants Cellone and Galicic's motion for summary judgment [doc. no. 137] is DENIED.

Defendant Union's motion for summary judgment [doc. no. 205] is DENIED.

Defendant Rodzay's motion for summary judgment [doc. no. 225] is DENIED.

Defendant Corso's motion for summary judgment [doc. no. 229] is DENIED.

Defendant National City Bank's cross-motion for summary judgment [doc. no. 250] is GRANTED.

Plaintiff's motion to amend or correct [doc. no. 279] is GRANTED.

Defendant Corso's motion to quash National City's cross-motion for summary judgment [doc. no. 284] is DENIED.

The stay on defendant Cellone's and defendant Galicic's indemnity action against the Fund is lifted. Judgment is entered in favor of the Fund on the indemnity claims.

BY THE COURT:

_____, J.

cc:  All Counsel of Record